UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DERREK LARKIN, | |
| Plaintiff, | CIVIL ACTION NO. 3:25-cv-00795 |
| v. | (SAPORITO, J.) |
| ARVIZA, *et al.*, | |
| Defendants. | |

### MEMORANDUM

Plaintiff Derrek Larkin, a prisoner proceeding *pro se*, has filed an amended complaint (Doc. 27) raising a series of allegations against personnel affiliated with FCC-Allenwood. Pursuant to 28 U.S.C. § 1915A, he will be permitted to seek injunctive relief based on his allegations of inadequate medical care, but all other claims will be dismissed.

I. Background

Larkin's initial complaint sought injunctive relief related to the alleged confiscation of his CPAP machine. That complaint was dismissed as moot based on the defendant's uncontested evidence that Larkin had been provided a new CPAP machine, *see* (Doc. 23), but Larkin was permitted to file this amended complaint.

Larkin broadly alleges that eight defendants affiliated with FCC-

Allenwood have engaged in a wide variety of "verbal and mental abuse" and "abuse of position and power." However, the essence of his complaint concerns his efforts to secure a CPAP machine and the defendants' alleged retaliation after he pursued administrative remedies and filed this lawsuit.

Larkin alleges that when he arrived at FCC-Allenwood, it took more than six months for him to receive a CPAP machine, despite a court order that he be provided one. He ultimately received the machine, but it was later confiscated during a cell search. This search in turn resulted in "falsified" disciplinary charges, allegedly imposed in retaliation for Larkin filing prison grievances. Larkin was transferred to the Secure Housing Unit, where he was refused access to a CPAP machine. He filed numerous "cop-outs[1]" and had "hundreds of in person interaction[s]" with staff about this issue, but "90 percent" of his requests went unanswered. Larkin also made repeated requests to be seen by the "psych department" for mental health concerns, which were allegedly ignored or denied.

---

[1] The term "cop-out" may refer to an "Inmate's Request to Staff Member," a method for prisoners to seek informal resolution. *See, e.g.*, *Milhouse v. Peoria*, No. 1:10-CV-00135, 2010 WL 4853717, at *1 (M.D. Pa. Nov. 22, 2010).

Larkin alleges that he has been subject to ongoing harassment based on his attempts to grieve and litigate the CPAP issue. On an unspecified date, Lt. Carpenter and two John Doe officers allegedly stopped Larkin to perform a pat-down search, during which they allegedly "humiliated, mentally and verbally abused" Larkin. After the search, one of the officers said: "You['re] the sh[*]thead who likes to file lawsuits." Larkin said that he wanted to be able to sleep at night (apparently in reference to the CPAP machine), "and for the staff to realize that he still has rights to request and file if need be," to which one officer replied: "Well, don't come to prison," while another smirked and laughed.

Larkin was then escorted to Carpenter's office, where he allegedly received "verbal and mental abuse . . . non-stop [and] without reason." Carpenter questioned him "for the better part of 10 minutes" about this lawsuit, asking: "What chance do you really have?" and "How much good time you really want to lose?" Carpenter then arranged for Larkin's cell to be searched, and allegedly told the searching officer: "Make sure you f[*]ck it up nice for him." Larkin was also strip searched, allegedly for no "proper reason."

On October 22, 2025, Larkin requested a replacement hose for his CPAP machine, because the hose had been damaged during a cell search. Boyer, a "medical officer," allegedly told Larkin that he was "too busy to get a replacement hose," and that he should try again next week when his "luck might be better." Larkin "begg[ed] and plead[ed]" for the equipment, and asked "how he was going to sleep until 'next week'," to which Boyer allegedly replied: "That[] does not look like my problem." An onlooking officer, Moyer, "added something on to [Boyer's] inappropriate statements," but the complaint does not explain what Moyer added.

Throughout the complaint, Larkin names a series of other actions that he attributes to retaliation. His administrative remedies have "all in some way been stonewalled" by the staff, as part of an alleged "conspiracy" to limit, delay, or obstruct grievances. "On more than one occasion," unspecified correctional officers have "addressed [Larkin] to speak about" this lawsuit. He thus blames retaliation for the denial of a visit with his wife; a "falsified threat assessment" leading to another period in the SHU; and three "falsified shots/incident reports." At some unspecified time in the SHU, Larkin "stated [loud] enough so the whole SHU range could hear him that he had 'rights.'" An unspecified officer

allegedly responded: "You only have the rights I give you." A case manager allegedly told Larkin: "This is what you get when you don't lay down . . . maybe now you'll learn your lesson." In addition, unidentified staff allegedly withheld or delayed his legal and personal mail in the SHU for as long as "10-16 days without reason," "open[ed] and cop[ied legal] mail without [Larkin's] consent," and "illegally denied [Larkin] all forms of communication with his family."

Larkin asserts constitutional violations based on retaliation, "abuse of power," "withholding/tampering with mail," "obstruction of administrative process," "mental and verbal assault," "intimidation," and deliberate indifference to a serious medical need, in various combinations, against eight defendants: Warden Arviza, Deputy Warden Wezneski, Dr. Cullens, Lt. Carpenter, Boyer, Moyer, and the two John Does. He seeks monetary relief and immediate release to home confinement.[2]

## II.  LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil

---

[2] The complaint also includes a reference to potential "declaratory judgment on some issues," but does not indicate what declaratory relief Larkin is seeking, if any.

complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards).

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most

favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

III. DISCUSSION

### A. Monetary Relief

Larkin's claims for monetary damages cannot proceed. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied right of action for damages against federal officials for constitutional violations. However, the right does not extend to cases presenting a different "context" from

those previously recognized by the Supreme Court. "If the case is different in a meaningful way from previous *Bivens* cases decided . . . then the context is new." *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). If the case presents a new context, the Court must consider whether there are other "special factors" that cast doubt on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. Ultimately, "if a court concludes that even a single reason exists to pause before applying *Bivens* in a new context, then special factors counseling hesitation exist and a *Bivens* remedy does not lie." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quotations omitted).

In *Bivens*, the Supreme Court recognized a damages remedy where a plaintiff alleged that he was detained, and his apartment searched, without probable cause. *See* 403 U.S. at 389. The Supreme Court subsequently permitted an Eighth Amendment claim for damages against a federal prison officer for denial of adequate medical care. In that case, an inmate with asthma was kept in prison against the advice of doctors, denied medical attention for eight hours after a severe asthma attack, given drugs that made his attack more severe, treated with a

faulty respirator, and not timely taken to the hospital, which resulted in his death. *See Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980).[3] However, Larkin's allegations do not fit into either context.

To the extent Larkin intended to assert a Fourth Amendment claim based on allegedly unreasonable searches, "[t]here can be little doubt that [his] Fourth Amendment claim is a new context because it involves allegations regarding the search of a prison cell – not a private residence as was the case in *Bivens*." *Leinheiser v. Decker*, No. CV204380RBKAMD, 2024 WL 1298880, at *7 (D.N.J. Mar. 27, 2024) (citing examples). Other factors counsel against extending *Bivens* into this context, including prison administrators' legitimate interest in limiting contraband and maintaining prison security. *See Parkell v. Danberg*, 833 F.3d 313, 326 (3d Cir. 2016) (given these interests, prisoners' Fourth Amendment rights are "very narrow").

Larkin's medical care claim also presents a different context. "Although the Court does not discount any discomfort, pain, or emotional

---

[3] The Supreme Court has also recognized a *Bivens* remedy in the context of a gender discrimination claim, *see Davis v. Passman*, 442 U.S. 228, 244 (1979).

distress [Larkin] has suffered," this complaint, unlike *Carlson*, does not describe an imminent medical emergency.[4] Moreover, the provision of chronic medical care "is a specialized activity requiring a high degree of training and qualification," which courts are ill-equipped to regulate, particularly in the prison context.[5] Therefore, Larkin states no viable claim for monetary relief based on any of the alleged constitutional violations.

### B. Injunctive Relief

The Court must also consider whether Larkin has alleged facts sufficient to pursue injunctive relief. As an initial matter, regardless of the merit of his claims, the Court cannot grant his request of release to home confinement. *See* 18 U.S.C. § 3621(b)(5) (placement decisions of the Bureau of Prisons are "not reviewable by any court"); *United States v. Robinson*, 2020 WL 5793002, at *5 n.2 (M.D. Pa. Sept. 28, 2020).

---

[4] *Gayle v. Mowatt et al.*, No. 1:23-CV-00861, 2025 WL 903832, at *15-16 (M.D. Pa. Mar. 25, 2025); *see also Holton v. Finley*, No. 4:21-CV-737, 2024 WL 1919238, at *9-10 (M.D. Pa. Mar. 21, 2024), report and recommendation adopted, 2024 WL 1913172 (M.D. Pa. May 1, 2024).

[5] *Peguero v. Quay*, No. 1:22-CV-00057, 2023 WL 2410882, at *9 (M.D. Pa. Mar. 8, 2023) (citation omitted); *Holton*, 2024 WL 1919238, at *10.

However, construing the complaint liberally, as required for a *pro se* plaintiff, the Court interprets Larkin as requesting the cessation of any ongoing constitutional violations. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 64 (2001) (where a *Bivens* remedy is unavailable, injunctive relief is "the proper means for preventing entities from acting unconstitutionally").

The Court finds no plausible basis for injunctive relief based on Larkin's claims of retaliation. To state a *prima facie* case of First Amendment retaliation, a plaintiff must allege that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

Larkin attributes a wide variety of actions to "retaliation," but in general, he has not pled facts (beyond conclusory speculation) that show a retaliatory motive for these actions. For example, he does not identify who was involved with the alleged mail interference, the denial of a visit

with his wife[6], or the confiscation of his CPAP machine, nor explain why these unnamed individuals would be motivated by his administrative grievances or this lawsuit. *See, e.g.*, *Smith v. Price*, No. 3:11-CV-1581, 2012 WL 6541008, at *17 (M.D. Pa. Nov. 21, 2012) (complaint reflected "a preternatural, global, subjective sensitivity to alleged retaliation, with [the plaintiff] ascribing some retaliatory motive to virtually every action that occurs at the prison").

At most, the complaint plausibly alleges retaliation on a single day during which Larkin received a pat-down and a cell search and Lt. Carpenter and the two John Doe officers commented on his lawsuit.[7]

---

[6] An attached "Inmate Request to Staff Member" shows that Larkin's request for a "special visit for 8-9-25 for [his] wife" was denied "due to the receipt of [two] 100 level incident reports . . . in the past year." The identity of the decision-maker is not discernable from this document. *See* (Doc. 27-1 at 15).

[7] Larkin notes "more than one" instance of officers approaching him to "speak about" his lawsuit, but does not explain how those officers were responsible for actions against him. Disparaging comments or other verbal harassment, although distressing, are not themselves "adverse actions" that sustain a retaliation claim. *See Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009); *Booth v. King*, 228 Fed. Appx. 167 (3d Cir. 2007). Although the Court acknowledges Larkin's allegations of fear that he will suffer unspecified abuse or retaliation, Larkin's subjective fear is not sufficient to grant injunctive relief. *See Zokaites v. Land-Cellular Corp.*, 424 F. Supp. 2d 824, 832 (W.D. Pa. 2006) ("Injunctive relief will not
*(continued on next page)*

Assuming that the searches were in some way motivated by the lawsuit, the complaint does not say when this interaction occurred or suggest ongoing conduct by these officers or ongoing consequences from this incident.[8] Similarly, his allegations of interference with mail during prior confinement in the SHU do not plausibly suggest an ongoing violation justifying injunctive relief. *See* (Doc. 27 at 8, 14).

However, Larkin may proceed on a claim for injunctive relief premised on deliberate indifference to his serious medical needs, including the alleged failure to properly maintain his CPAP machine and provide mental health care.[9] *See Malesko*, 534 U.S. at 64; *Pearson v.*

---

be granted merely to allay the fears and apprehensions or to soothe the anxieties of the parties.").

[8] *See Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 159-60 (3d Cir. 2006) ("To establish standing in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct. Past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by continuing, present adverse effects.") (quotations and citations omitted).
Larkin points to the October 22, 2025, incident in which he was allegedly denied a replacement hose for his CPAP machine. While the response Larkin attributes to Boyer is deplorable, the complaint does not plausibly allege that Boyer's response was motivated by Larkin's grievances or lawsuit, or that Boyer was even aware of them.

[9] Larkin's complaint alludes to other legal theories that suggest no
*(continued on next page)*

*Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). The appropriate defendant for such a claim is an official "responsible for ensuring that any injunctive relief is carried out." *Parkell*, 833 F.3d at 332 (citation omitted). Therefore, Larkin will be permitted to proceed against Warden Arviza.

## IV.   CONCLUSION

Larkin may proceed on a claim for injunctive relief against Warden Arviza premised on deliberate indifference to a serious medical need, but all other claims will be dismissed. An appropriate order follows.

Dated: December 9, 2025                    *s/Joseph F. Saporito, Jr.*
                                            JOSEPH F. SAPORITO, JR.
                                            United States District Judge

---

plausible claim for injunctive relief. A prisoner has no constitutional right to a grievance process, so his allegations that administrative remedies were "stonewalled" do not suggest a viable claim. *See Burnside v. Moser,* 138 F. App'x 414, 416 (3d Cir. 2005). To the extent he intended to assert a claim premised on searches of his cell, "prisoners do not have a Fourth Amendment right to privacy in their cells," *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001), and the complaint does not suggest a risk of an ongoing constitutional violation justifying injunctive relief. *See, e.g., Jones v. Harry,* No. 24-CV-5692, 2024 WL 4940547, at *5 (E.D. Pa. Dec. 2, 2024), aff'd, No. 25-1387, 2025 WL 2255096 (3d Cir. Aug. 7, 2025).